## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 9:16-CV-81393-MIDDLEBROOKS

ZURICH AMERICAN INSURANCE
COMPANY,

        Plaintiff,

v.

AMERISURE INSURANCE COMPANY,
AMERISURE MUTUAL INSURANCE
COMPANY, HARTFORD FIRE INSURANCE
COMPANY, HARTFORD CASUALTY
INSURANCE COMPANY, and HARTFORD
UNDERWRITERS INSURANCE COMPANY,

        Defendants.

_____/

## ORDER AND OPINION GRANTING DEFENDANTS AMERISURE INSURANCE COMPANY AND AMERISURE MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

THIS CAUSE comes before the Court on Defendants Amerisure Insurance Company and Amerisure Mutual Insurance Company's (together, "Amerisure") Motion to Dismiss the Second Amended Complaint ("Motion"), filed on December 8, 2016. (DE 43). Plaintiff Zurich American Insurance Company ("Zurich") filed a Response in opposition on December 21, 2016 (DE 51), to which Amerisure replied on December 28, 2016 (DE 54). For the reasons stated below, the Motion is granted.

### BACKGROUND

This declaratory judgment action concerns a dispute between insurance providers over an alleged obligation to defend an insured in an underlying lawsuit. (Second Amended Complaint

(DE 39), hereinafter "Complaint" or "Compl.," at ¶ 15).  It is argued that Defendants'[1] alleged failure to comply with their duty to defend has led Zurich to shoulder the financial burden, thereby incurring attorney's fees, costs, and expenses and entitling it to reimbursement with interest from the nonresponsive insurers.  (*Id.* at ¶¶ 32, 46, 60, 74).

The underlying action stems from a construction project in Palm Beach County, Florida known as "Fiore at the Gardens" (the "project" or "Fiore").  (*Id.* at ¶ 17).  The general contractor for the project was WP South Builders, (Florida S), LLC ("WP South").  (*Id.* at ¶¶ 17, 19).  The Complaint suggests, but studiously avoids stating, that WP South held an insurance policy with Maryland Casualty Company ("Maryland Casualty") (*id.* at ¶¶ 6, 17, 32), an entity for which Zurich is successor in interest (*id.* at ¶ 7).[2]  To complete the project, WP South retained "a number" of subcontractors (*id.* at ¶ 19), three of which are relevant to this action: Cobra Construction, Inc. ("Cobra"), KD Construction of Florida, Inc. ("KD Construction"), and Glass Engineering & Installation, Inc. ("Glass Engineering") (collectively, the "subcontractors").  (*Id.* at ¶ 20).  In its agreements with the subcontractors, WP South required each to "place WP South on [its] own commercial general liability insurance policy(ies) as an Additional Insured," which the subcontractors did.  (*Id.* at ¶¶ 25, 27).  Two of the subcontractors, KD Construction and Glass Engineering, were issued policies by Amerisure (*id.* at ¶ 26 & Exs. 5 & 6), an insurance provider (*id.* at ¶¶ 8-9).  The Amerisure policies contained "Additional Insured endorsements" (the "endorsements"), which granted WP South the Additional Insured status required by the

---

[1] Defendants Hartford Fire Insurance Company, Hartford Casualty Insurance Company, and Hartford Underwriters Insurance Company (collectively, "Hartford") have yet to file a response to the Second Amended Complaint and have not joined the instant Motion.
[2] As discussed further below, Zurich hints in its Response brief at the contents of its primary policy.  In particular, it references certain terms contained in "competing policy(ies)" and "the General Contractor's own policy" – presumably between WP South and Maryland Casualty – which Zurich contends will negate the force of Amerisure's policies.  (DE 51 at 9).

subcontractor agreements (*id.* at ¶ 27) and imposed a duty on Amerisure to defend the additional insured in lawsuits covered by the policy terms (*id.* at ¶ 30). These endorsements are components of policies that Zurich incorporated by reference into the Complaint in their "entirety." (*Id.* at ¶ 27). They include "other insurance" clauses, which read:

> Any coverage provided in this endorsement is excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent, or on any other basis unless the written contract, agreement, or certificate of insurance requires that this insurance be primary, in which case this insurance will be primary without contribution from such other insurance available to the additional insured.

(*Id.* Ex. 5 at 2 & Ex. 6 at 2).

In 2009, the Fiore at the Gardens Condominium Association, Inc. (the "condo association") filed a lawsuit (the "underlying suit") alleging defects in the project's construction. (*Id.* at ¶ 21 & Ex. 1).[3] The condo association's second and third amended complaints named WP South as a defendant. (*Id.* at ¶ 21 and Exs. 2-3). After it received the lawsuit, WP South "tendered the claims to the Defendants and demanded a defense as well as indemnification under the terms and condition of the policy(ies)." (*Id.* at ¶ 28). However, Defendants denied that the policies imposed such obligations. (*Id.* at ¶ 29). As a result, WP South defended the claims against it on its own and also asserted third-party claims against the subcontractors. (*Id.* at ¶ 22).[4]

At some undisclosed point, WP South and Maryland Casualty executed an otherwise confidential "Settlement Agreement and Release." (*Id.* at ¶ 16). The settlement contains an assignment of rights ("assignment") from WP South to Maryland Casualty (*id.*), which purports

---

[3] A complaint in the underlying suit was filed in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida and is styled *Fiore at the Gardens Condo. Assoc., Inc. v. Fiore at the Gardens, LLC, et al.*, Case No. 50 2009 CA 001047 XXXXMB-AE. (Compl. Ex. 1 at 1).

[4] According to Zurich, the condo association's complaint alleged damages that resulted from work attributable to the subcontractors. (Compl. at ¶ 23).

to grant the latter the power to stand in the former's shoes and enforce any of WP South's rights against insurers of its subcontractors on the basis of the Additional Insured policy provisions (*id.* at ¶ 17). It is unclear from the face of the Complaint whether it was through the settlement agreement or some other instrument that Maryland Casualty compensated WP South for the attorney's fees and costs that the latter expended defending itself against the underlying suit.

Zurich, as Maryland Casualty's successor in interest, filed an amended complaint on July 26, 2016 in Florida state court in order to pursue the assigned rights. (DE 1-2).[5] On August 8, 2016, Amerisure removed the case to this Court, alleging federal subject matter jurisdiction based on the Parties' complete diversity of citizenship and an amount in controversy over $75,000.00. (DE 1). Zurich filed a Second Amended Complaint on December 5, 2016, which was materially identical to its First Amended Complaint but for the joinder of another Amerisure entity as a Defendant. (DE 39). The Complaint lists three counts corresponding to the policies for each of the three subcontractors – the last two of which are against Amerisure. (Compl. at ¶¶ 47-60 & 61-74). The only remedy Zurich seeks is declaratory relief under Fla. Stat. § 86.011 ("Jurisdiction of trial court"). (*Id.* at ¶¶ 34, 48, 62). Specifically, it requests that the Court determine that the subcontractors' policies required Amerisure to defend WP South in the underlying suit (*id.* at ¶¶ 60.c., d., e., f., g., 74.c., d., e., f., g.); that Zurich is entitled to be reimbursed by Amerisure for the attorney's fees and costs paid to WP South for its defense against the underlying suit and for those expended in the present case (*id.* at ¶¶ 60.h., i., 74.h., i.); and that Zurich may also recover pre- and post-judgment interest (*id.* at ¶¶ 60.j., k., 74.j., k.).

---

[5] Zurich's state court action was filed in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida and is styled *Zurich Am. Ins. Co. v. Amerisure Ins. Co., et al.*, Case No. 50-2016-CA-008170-XXXX-MB. (DE 1-2 at 2).

Amerisure moves for dismissal of Zurich's claims against it pursuant to Fed. R. Civ. P. 12(b)(6). (DE 43 at 1).

**LEGAL STANDARD**

### A. 12(b)(6) Motions Generally

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993)).

When reviewing a motion to dismiss, a court must construe plaintiff's complaint in the light most favorable to plaintiff and take the factual allegations stated therein as true. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 678; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (stating that an unwarranted deduction of fact is not considered true for purpose of determining whether a claim is legally sufficient).

5

Generally, a plaintiff is not required to detail all the facts upon which he bases his claim. Fed. R. Civ. P. 8(a)(2).  Rather, Rule 8(a)(2) requires a short and plain statement of the claim that fairly notifies the defendant of both the claim and the supporting grounds.  *Twombly*, 550 U.S. at 555-56.  However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 556 n.3.  Plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).  "Factual allegations must be enough to raise [plaintiff's] right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Id.*

### B. Declaratory Judgment Actions

As a threshold matter, Zurich argues that Amerisure has raised merits-based arguments that are inappropriate on a motion to dismiss a declaratory judgment action.  However, Zurich's premise misconstrues the nature of declaratory judgments.  First, Zurich refers to the operation of, and standard of review for, Florida's Declaratory Judgment Act.  *See* Fla. Stat. §§ 86.011, 86.021.  But Florida law is not controlling here.  It is a fundamental rule that when federal jurisdiction arises through the parties' diversity of citizenship, substantive issues are governed by state law and procedural issues by federal law.  *Brown v. Nichols*, 8 F.3d 770, 773 (11th Cir. 1993); *see generally Hanna v. Plumer*, 380 U.S. 460 (1965).  The Eleventh Circuit has held that the Florida Declaratory Judgment Act "does not confer any substantive rights," but is instead "a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county counts." *Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 881 (11th Cir. 2016) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138, n.3 (11th Cir. 2005) (holding that district court must apply federal Declaratory Judgment Act, rather than state declaratory judgment act, when sitting

6

in diversity action)).  Being procedural, the Florida statute does not apply in this diversity case.

Instead, I must ascertain the scope of review under the federal Declaratory Judgment Act (DJA).

*See* 28 U.S.C. § 2201.

Second, and contrary to Zurich's theory, pursuing one's rights by seeking a declaratory

judgment does not permit a party to avoid scrutiny, under Rule 12(b)(6), as to whether it is has

successfully stated a claim for relief.  It is true that a motion to dismiss may challenge the

sufficiency of a declaratory judgment action to the extent the complaint fails to present an

"actual controversy" that mirrors Article III's "case-or-controversy" requirement.  *Walden v. Ctr.*

*For Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012).[6]  But this ground for

dismissal is concurrent with, not a substitute for, the obligation to state a claim upon which relief

may be granted.  That is because the DJA "creates a remedy, not a cause of action."  *Buck v. Am.*

*Airlines, Inc.*, 476 F.3d 29, 33, n.3 (1st Cir. 2007).  As such, a plaintiff must present valid

"substantive claims" in order to sustain the "request for declaratory relief in relation to those

claims."  *Long v. Wells Fargo Bank, N.A.*, __ F. App'x __, 2016 WL 6803706, at *2 (10th Cir.

2016) (citing *Fedrowicz v. Pearce*, 641 F. App'x 773, 776, n.2 (10th Cir. 2016); *Adams v. FedEx*

*Ground Package Sys., Inc.*, 546 F. App'x 772, 776-77 (10th Cir. 2013)).  And since a Rule

12(b)(6) motion attacks the sufficiency of a plaintiff's substantive claims, it is in essence also an

assault on the remedy that these claims support.  Thus, insofar as Amerisure contends that

Zurich's putative rights, as currently pled, are barred as a matter of law, these "merits-based"

arguments are entirely appropriate at this stage.

---

[6] Zurich appears to invoke an analogous standard under Florida law.  *See Okaloosa Island*
*Leaseholders Ass'n, Inc. v. Okaloosa Island Auth.*, 308 So. 2d 120, 122 (Fla. DCA 1st 1975)
(describing the showing necessary to survive a motion to dismiss a declaratory judgment action
under the Florida DJA).

## DISCUSSION

Amerisure argues that the Complaint establishes on its face that Amerisure constituted only an excess insurer.  Therefore, under Florida insurance law, Zurich could not claim that Amerisure owed WP South a duty to defend without also alleging that WP South exhausted its primary coverage with Zurich – really, its predecessor, Maryland Casualty.  In the alternative, Amerisure maintains that to the extent Zurich seeks contribution or equitable subrogation after the fact for defense costs, that kind of recovery is prohibited.  Zurich first responds that Amerisure has merely raised affirmative defenses that it need not anticipate and overcome in its own pleading.  Second, it cites to exceptions to the general rules on excess insurance and contribution, respectively: (a) when the opposing insurers mutually purport to issue excess policies; and (b) where one insured entity has agreed by contract to indemnify another.  Third, Zurich submits that, even if the subcontractors' Additional Insured policies were of the excess variety, the basis for liability advanced in the underlying suit still brought the action within the scope of the policies' coverage and thereby triggered Amerisure's duty to defend.

Amerisure's objections to the Complaint's allegations have merit.  With respect to the duty to defend, the Eleventh Circuit interprets Florida law such that when an insurance policy defines its coverage as secondary or "excess" to a primary policy, the excess insurer has no duty to defend the insured – so long as the primary policy provides for a defense and its coverage has not been exhausted.  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Travelers Ins. Co.*, 214 F.3d 1269, 1272-73 (11th Cir. 2000) (excess insurer's "duty to defend was consecutive to, rather than concurrent with, any other underlying insurer's duty to defend"); *see also U.S. Fire Ins. Co. v. Freedom Vill. Of Sun City Ctr., Ltd.*, 279 F. App'x 879, 881 (11th Cir. 2008) (relying on *Nat'l Union* rule for Florida case); *Coker v. Am. Guar. & Liability Ins. Co.*, 825 F.3d 1287, 1294 (11th

Cir. 2016) (construing Georgia law in identical manner).  The court reasoned that this result was compelled by Florida precedent which measured the parties' intent "solely by the language of the policies unless the language is ambiguous."  *Nat'l Union*, 214 F.3d at 1272 (quoting *Towne Realty, Inc. v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1267 (11th Cir. 1988)).

In this case, Zurich expressly incorporates the "entirety" of the Amerisure policies issued to KD Construction and Glass Engineering (Compl. at ¶ 27), the Additional Insured endorsements for which are attached to the Complaint as exhibits (*id.* at Exs. 5-6).  Zurich does not dispute that the endorsements unambiguously designate Amerisure's coverage of WP South as "excess" unless any other policy held by WP South required the Additional Insured coverage to be primary (the "express exception").  (*Id.* at Ex. 5 at 2 & Ex. 6 at 2); *see also Gov't Emp. Ins. Co. v. Lally*, 327 F.2d 568, 572 (4th Cir. 1964) (interpreting "any other insurance" language in endorsement to mean "insurance separate and distinct from the policy of which the . . . endorsement forms a constituent part").  Further, the Complaint does not aver that WP South had no primary policy,[7] nor does it allege that WP South's policy with Maryland Casualty or any other insurer activated the express exception, or that such a policy's coverage had been exhausted.  On its face, then, the Complaint's demand for a ruling on Amerisure's duty to defend would appear to be foreclosed by *Nat'l Union*. *Nat'l Union*, 214 F.3d at 1272-73.

Amerisure also correctly states the law on contribution between insurance carriers. Florida courts have consistently held that, once the duty to defend is activated, every subject

---

[7] By remaining silent in the Complaint on the original relationship between WP South and Maryland Casualty, Zurich keeps open the theoretical possibility that Amerisure was the only insurer to issue a policy covering WP South, which would negate the excess insurer rule. However, factual allegations must not be merely "possible" but also "plausible." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012).  I do not find it plausible that an insurer would subsidize the cost of a company's defense (Compl. at ¶ 32) and negotiate the acquisition of that company's rights (*id.* at ¶ 17) unless there was an underlying transfer of risk from the company to the insurer.

insurer assumes it on a personal and indivisible basis. *Penn. Lumbermen's Mut. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 43 So. 3d 182, 186-188 (Fla. 4th DCA 2010); *Cont'l Cas. Co. v. United Pac. Ins. Co.*, 637 So. 2d 270, 271-275 (Fla. 5th DCA 1994); *Argonaut Ins. Co. v. Md. Cas. Co.*, 372 So. 2d 960, 963-64 (Fla. 3rd DCA 1979). That means that when an insured tenders a claim to multiple insurance providers, the entity that actually engages in the defense and incurs the fees and costs associated with it cannot subsequently seek contribution or equitable subrogation from the fellow insurer who "lagg[ed] behind." *Cont'l Cas.*, 637 So. 2d at 273.[8] The rationale for this doctrine is rooted in public policy: if insurers could sue each other for reimbursement, they "would have no incentive to settle and protect the interest of the insured, since another law suit would be forthcoming to resolve the coverage dispute between the insurance companies." *Argonaut*, 372 So. 2d at 964. Here, Zurich ultimately bore the cost of WP South's defense. It did so because of its predecessor in interest's independent obligation. Regardless of whether Amerisure was also bound at the time to defend WP South, Zurich cannot now seek to divvy up the costs derived from its predecessor's unilateral burden.[9] Like the duty

---

[8] An excess insurer who defended its insured without its duty being triggered may, however, obtain equitable subrogation from a nonresponsive primary insurer. *Phoenix Ins. Co. v. Fla. Farm Bureau Mut. Ins. Co.*, 558 So. 2d 1048, 1050 (Fla. 2nd DCA 1990).

[9] I am not persuaded by Zurich's attempt to distinguish the *Argonaut* line of cases. Zurich cites several opinions for the uncontroversial proposition that contractual rights are generally assignable. It also refers to a Florida decision in which an insured tortfeasor assigned its rights to an injured plaintiff, who the court permitted to enforce a settlement against the sole insurer refusing to contribute to the settlement fund. *Fla. Ins. Guar. Ass'n v. Giordano*, 485 So. 2d 453 (Fla. 3rd DCA 1986). From these sources, Zurich concludes that the anti-contribution principle does not apply to assignees. That is not the case. *Giordano* involved a recovery by an injured third party, not an insurance provider. *Giordano*, 485 So. 2d at 455. More importantly, *Pennsylvania Lumbermen's* specifically addressed the viability of an action premised on such an assignment, finding it "contrary to case law and public policy" because it attempts to elevate form over substance. *Penn. Lumbermen's*, 43 So. 3d at 188. The anti-contribution rule was designed to de-incentivize insurers from shirking their obligations to their insureds. *Id.* That purpose would be frustrated if carriers could reopen the door to litigation through the legal fiction of obtaining their insureds' rights. *Id.* Zurich's contention that the result in *Pennsylvania*

to defend question, the portion of the Complaint seeking a judgment on Zurich's entitlement to reimbursement for attorney's fees and costs is doctrinally barred.[10]   Accordingly, unless Zurich can identify an applicable exception to the excess insurer or anti-contribution doctrines, the operative Complaint does not state a cause of action for which relief can be granted.

Zurich's first counter to Amerisure's line of attack implicates the rules relating to incorporation by reference.   Zurich propounds that by discussing the terms of the policies issued to the subcontractors, Amerisure asks the Court to "consider documents outside the four corners" of the Complaint.   (DE 51 at 8).   In its view, Amerisure has merely disguised affirmative defenses, extrinsic to the Complaint, as critiques of Zurich's pleadings.   Moreover, continues the argument, Amerisure demands a level of detail that exceeds the requirements of the federal rules when it insists that, in order to survive a motion to dismiss, Zurich must plead facts and attach documents anticipating and responding to these affirmative defenses.

This rebuttal misses the mark because it does not take into account the fact that Zurich voluntarily made the Amerisure policies – and thus, the constituent endorsements – a part of its Complaint.   A district court can generally consider documents "attached to a complaint or incorporated in the complaint by reference . . . on a motion to dismiss under Rule 12(b)(b)." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).   Here, Zurich has done both.   Even had Zurich not

---

*Lumbermen's* can be explained by the role reversal – compared to the instant case – of general and sub- contractors is not supported by any language from that opinion.

[10] Furthermore, there is merit to Amerisure's argument that, without a dispute over financial compensation, the Court could not consider Amerisure's duty to defend by itself.   That is because, on its own, the latter concerns an academic question of a past obligation.   But a declaratory judgment can redress only a live controversy in which "there is a substantial likelihood that [the plaintiff] will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999).   An adjudication of an "[i]njury in the past . . . would be nothing more than a gratuitous comment without any force or effect." *Id.* at 1348 (internal quotations and alterations omitted).

adopted the policies explicitly, Rule 10(c) states that a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Solis-Ramirez v. United States Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (holding that Rule 10(c) assures court's consideration of document attached to complaint does not convert motion to dismiss into motion for summary judgment).[11]   Admittedly, courts must conduct an inquiry into the nature of the document, its reliability, and the purpose for which it is attached before assuming that it stands for the truth of the content facially represented therein. *Goines v. Valley Cmty. Serv. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133-34 (D.C. Cir. 2015); *N. Ind. Gun & Outdoor Shows, Inc. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998); *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674-75 (2d Cir. 1995). However, if it is clear that the document "is what the complaint say it is" and that the attaching party endorsed its representations, then it "will be read to evidence what it incontestably shows." *Gant*, 69 F.3d at 674. That is the case here. Zurich is therefore incorrect to describe the endorsements and the excess policy clause as "outside the four corners" of the Complaint.

Accepting the excess policy clause as part of the Complaint, I may entertain an affirmative defense[12] that invokes it. That is because:

---

[11] Indeed, under the implicit "incorporation by reference" doctrine, the Court could probably have considered the contents of the policies even had they been introduced for the first time in the instant Motion. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (document attached to motion to dismiss may be considered if "(1) central to the plaintiff's claim; and (2) undisputed"); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (same).

[12] Whether Amerisure's argument should be described as an "affirmative defense" within the meaning of Rule 8(c) is questionable. A defense is "affirmative" when it "rais[es] *new facts* and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegation in the complaint are true." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary) (emphasis added).   By referencing the endorsements, Amerisure does not raise a new fact, but merely isolates an element of Zurich's pleadings. *See Am. Gooseneck,*

. . . a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint. The claim may be adequately stated . . . but in addition to the claim the complaint may include matters of avoidance that preclude the pleader's ability to recover. When this occurs, the complaint has a built-in defense and is essentially self-defeating. The problem is not that plaintiff merely has anticipated and tried to negate a defense he believes his opponent will attempt to use against him; rather plaintiff's own allegations show that the defense exists.

*Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984) (internal quotations and citations omitted); *accord. Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief."). Since the excess policy clause gives rise to the *Nat'l Union* defense, its inclusion was "self-defeating." *Quiller*, 727 F.2d at 1069. For similar reasons, Amerisure's insistence that Zurich plead a factual predicate for circumventing the *Nat'l Union* rule does not go beyond the bounds of Rule 8(a)(2). While Zurich had no initial burden to raise the issue, once "allegations of [a] plaintiff's complaint erected the affirmative defense[,] it was his duty[,] in order to extricate himself therefrom[,] to plead any exceptions upon which he relied." *Marsh v. Butler Cty.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (quoting *Kincheloe v. Farmer*, 214 F.2d 604, 605 (7th Cir. 1954) (internal alterations omitted), *abrogated on other grounds by Twombly*, 550 U.S. at 561-63. As a consequence, it was incumbent upon Zurich to allege facts or attach documents from which an exception to the *Nat'l Union* rule could be inferred.

---

*Inc. v. Watts Trucking Serv., Inc.*, 159 F.3d 1355, 1998 WL 698937, at *4 (5th Cir. 1998) (not published) ("A denial that an essential element of a claim exists is not the same as an affirmative defense to the claim . . ."). In this light, there is no question Amerisure has found an internal inconsistency that bars a declaratory judgment on the facts pled. Nonetheless, because the outcome is ultimately the same and because usage of the term "affirmative defense" is more consistent with the Eleventh Circuit's own doctrine pertaining to these circumstances, I continue to employ it.

Zurich's failure in this regard directly affects the validity of its second rebuttal argument. Though not labeled as such, Zurich basically asserts a pair of recognized exceptions under Florida law, one dealing with an excess insurer's duty to defend, the other with the anti-contribution rule.  First, Zurich observes that when an insured holds multiple insurance policies that all purport to be in excess to a primary policy, that language is "deemed mutually repugnant." *Travelers Ins. Co. v. Lexington Ins. Co.*, 478 So. 2d 363, 365 (Fla. 5th DCA 1985); *Allstate Ins. Co. v. TIG Ins. Co.*, 711 So. 2d 84, 85 (Fla. 1st DCA 1998); *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 254 F.3d 987, 1005 (11th Cir. 2001); *Consol. Sys., Inc. v. Allstate Ins. Co.*, 411 F.2d 157, 162 (5th Cir. 1969).  Here, Zurich avers, there are terms in the "Other Insurance" provision of "competing policy(ies)" that would, in this way, thwart Amerisure's excess insurer status.  (DE 51 at 9).  Amerisure's Reply brief disputes whether the exception would apply in this situation.  However, it is not possible to determine the answer to this question because Zurich has not pled the contents of the policy issued by Maryland Casualty to WP South.[13]  While the Court must accept as true all factual allegations contained in the Complaint, *Erickson*, 551 U.S. at 93-94, the same does not hold for new facts that a plaintiff belatedly raises in response to a motion to dismiss.  That amounts to an impermissible attempt to amend the Complaint without leave of Court.  *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss."); *accord. Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("it is axiomatic that the complaint may not be amended by the

---

[13] In connection with this argument, Zurich states in passing that when a general contractor has been added as an additional insured to its subcontractor's policy, that policy is "never excess to the [g]eneral [c]ontractor's own policy."  (DE 51 at 9).  Besides being a bare legal conclusion without supporting authority, this theory fails for the same reason as stated above.

briefs in opposition to a motion to dismiss"). As a result, Zurich has not alleged enough to raise a "cancelling-out" exception to the *Nat'l Union* doctrine.

A similar defect impairs Zurich's second cited exception. Florida courts have crafted a narrow work-around to the anti-contribution doctrine. A "responsive" insurer who complied with its insured's tender for defense can extract reimbursement from the "nonresponsive" insurer when the insured had separately contracted with another entity, itself an insured of the nonresponsive carrier, to indemnify the first insured. *Cont'l Cas. Co. v. City of S. Daytona*, 807 So. 2d 91, 93 (Fla. 5th DCA 2002) (holding that city or its insurer could recover expenses – relating to defense of tort action – from little league's insurer, since little league agreed to indemnify city); *see also Progress Express Ins. Co. v. Fla. Dep't of Fin. Serv.*, 125 So. 3d 201, 204 (Fla. 4th DCA 2013) (citing *South Daytona*); *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, 654 F. App'x 466, 468-69 (11th Cir. 2016) (favorably citing, though distinguishing, *South Daytona*). The logic of the exception is that the insured parties' express decision to "shift[] exposure" from one to the other is imputed to the insurer relationship and overcomes the general anti-contribution principle. *S. Daytona*, 807 So. 2d at 93.

Zurich argues that *South Daytona* controls because WP South's subcontractor agreements with KD Construction and Glass Engineering required those subcontractors to "defend *and indemnify* WP South for any and all claims arising out of their work performed at the Project." (DE 51 at 14) (emphasis added). Again, this allegation is found nowhere in the Complaint. True, Zurich did plead that the subcontractors were contractually bound to place WP South on their general liability policies as an Additional Insured. (Compl. at ¶ 25). And it further stated that WP South demanded that *Amerisure* indemnify it under the terms of the subcontractors' policies. (*Id.* at ¶ 28). But those two assertions are different from the factual ingredient that was

15

decisive in *South Daytona* – a promise by one of the *insured*, independent of the insurance policies, to *indemnify* the other. *S. Daytona*, 807 So. 2d at 91, 93. Because indemnification and the duty to defend are distinct concepts, an allegation that the subcontractors were obligated to make WP South an Additional Insured is inadequate. *See Lime Tree Vill. Comm. Club Ass'n v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993) ("An insurer's 'duty to defend is distinct from and broader than the duty to indemnify . . .'") (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813 (Fla. 1st DCA 1985))). Discounting Zurich's post-hoc attempt to enhance its pleadings, or else its conflation of the two relevant concepts, the Complaint does not provide a sufficient factual foundation through which the *South Daytona* exception could be inferred. *Burgess*, 600 F. App'x at 665.

Finally, Zurich advances the theory that the nature of the underlying suit against WP South triggered Amerisure's duty to defend, irrespective of the endorsements' explicit qualification. Yet this argument simply ignores the foregoing authorities. The cases offered by Zurich stand for the proposition that an insurer is obligated to defend once it is determined that a third party's charges against the insured come within the scope of the policy. *See, e.g.*, *Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Prop. Corp.*, 487 So. 2d 1051, 1054 (Fla. 1986). Turning to the facts, Zurich notes that the condo association's allegations in the underlying suit pertained to property damage, a loss covered by the Additional Insured endorsements. That may well be true. But it does not follow that Amerisure's duty had been triggered at the start of the litigation – before any primary insurer had contributed to the defense. As already discussed, an excess insurer's duty to defend is prompted when the primary carrier reaches the dollar limit of its coverage. *Nat'l Union*, 214 F.3d at 1272-73. Plainly, this doctrine modifies the broader principle to which Zurich alludes. Zurich does not identify any cases stating otherwise. Nor are

such authorities likely to exist, as a requirement to defend one's insured regardless of the policy's explicit provision of excess status would swallow the *Nat'l Union* rule whole. Because Amerisure demonstrates that a declaratory judgment in Zurich's favor is, on the allegations pled, barred as a matter of law, the Complaint's counts against Amerisure warrant dismissal.

Accordingly, it is **ORDERED** and **ADJUDGED** that Defendants Amerisure Insurance Company and Amerisure Mutual Insurance Company's Motion to Dismiss the Second Amended Complaint (DE 43) is **GRANTED**. **Counts II and III** of the Second Amended Complaint (DE 39) are **DISMISSED**. Zurich may file a Third Amended Complaint **by January 27, 2017**.

**DONE AND ORDERED** in Chambers, at West Palm Beach, Florida, this *19* day of January, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record